UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAP CO., LTD.,<br><br>        Plaintiff,<br><br>      v.<br><br>MCAFEE, INC.,<br><br>        Defendant. | Case No. 14-cv-05068-JD<br><br>**ORDER RE MOTION TO STRIKE INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 48 |

In this patent infringement case, defendant McAfee moves to strike large portions of plaintiff CAP's infringement contentions. In particular, McAfee objects to CAP's including a single claim chart for each of the two asserted patents, despite accusing over a dozen products per patent as well as its attempt to add new accused products without moving for leave to amend its infringement contentions. McAfee also argues that the infringement contentions inadequately disclose the bases for its indirect, joint, and willful infringement allegations, as well as its allegations under the doctrine of equivalents. The Court finds that CAP's infringement contentions are inadequate, and strikes the portions described below with leave to amend.

## PROCEDURAL HISTORY

In November 2014, CAP filed this suit asserting three patents: U.S. Patent Nos. 8,544,078, RE42,196, and RE44,249. Complaint, Dkt. No. 1. CAP has since dropped the '249 patent. *See* Dkt. No. 59 at 2:15-17. CAP's infringement contentions were due on March 27, 2015, *see* Dkt. No. 64, and CAP served its infringement contentions on March 27 and 28. Declaration of James Valentine ¶ 4, Dkt. No. 48-1. After McAfee objected, CAP provided revised claim charts on April 21. *Id.* ¶ 12. Both the original and revised charts included only three charts (one for each of the three then-asserted patents), without separating out the 13 products accused of infringing the '078 patent and the 16 products accused of infringing the '196 patents in the revised contentions. Dkt.

Nos. 48-3 to -5, 48-7 to -9.

**LEGAL STANDARD**

"The local patent rules in the Northern District of California . . . require[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). Under Patent Local Rule 3-1, the party claiming infringement must serve contentions that list (a) each allegedly infringed claim; (b) each accused device, method, or instrumentality; (c) a chart "identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality"; (d) the bases for any claims of indirect or joint infringement; (e) whether each claim is alleged to be infringed literally or under the doctrine of equivalents; (f) the priority date to which each claim is entitled; (g) any of the patentee's own products that allegedly embody the asserted claims; and (h) the basis for any willful infringement claims. Patent L.R. 3-1.

Amendments to the infringement contentions are only permitted by order of the Court upon a timely showing of good cause. *See* Patent L.R. 3-6. As the Federal Circuit has held in interpreting our district's patent local rules, "'good cause' requires a showing of diligence" and "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro*, 467 F.3d at 1366. Nevertheless, the patent local rules are "not a straitjacket into which litigants are locked from the moment their contentions are served. There is a modest degree of flexibility, at least near the outset." *Comcast Cable Communications Corp., LLC v. Finisar Corp.,* No. C 06-04206 WHA, 2007 WL 716131, at *2 (N.D. Cal. Mar.2, 2007).

**DISCUSSION**

**I.  REPRESENTATIVE PRODUCTS**

McAfee initially objects to a number of CAP's claim charts for mixing and matching between different accused products. For example, while most of the elements of claim 10 of the '196 patent are charted against McAfee SiteAdvisor, *see* Amended Claim Chart for RE42,196 at

135, 141, 155, 159, Dkt. No. 48-9, the limitation "the connection request is issued by the client system according to information provided from a second web server after the client system is connected to the second web server separated from the first web server" is only charted against a document describing McAfee Complete Endpoint Protection, *see id.* at 135, while the limitation "treating a file determined to be harmful in the step (c2) and executing the file, if it can be treated, and aborting execution of the file determined to be harmful in the step (c2), if it cannot be treated" is charted against VirusScan Enterprise with the ScriptScan component, *see id.* at 160-61. Similarly, claim 1 of the '078 patent is charted against a combination of Next Generation Firewall, *see* Amended Claim Chart for U.S. Patent No. 8,544,078 at 50-68, 75-85, Dkt. No. 48-7, McAfee Internet Security, *see id.* at 70-72, McAfee SaaS/Cloud Protection, *see id.* at 72-73, and other products. Infringement cannot be shown by a muddled hash of elements from different products, since in order to infringe, "the accused device must contain each limitation of the claim, either literally or by an equivalent." *See TecSec, Inc. v. Int'l Business Machines Corp.*, 731 F.3d 1336, 1351 (Fed. Cir. 2013).

It is true that under certain circumstances, the patentee can chart a representative product instead of each of the accused products individually. *See Network Protection Sciences, LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013). But that hardly saves CAP's infringement contentions, which in many cases do not even chart a single product against all elements. Moreover, representative products may only be charted "when supported by adequate analysis showing that the accused products share the same critical characteristics." *Id.* That analysis cannot just be based on the patentee's say-so: "in order to rely on a claim that one accused product represents another for purposes of Rule 3-1(c), a patentee must do more than state as much. A patentee must state how." *Silicon Labs., Inc. v. Cresta Tech. Corp.*, No. 5:14-cv-03227-PSG, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015). CAP points to no such analysis in its contentions, or even in its opposition. Instead, it merely says that it cites to documents that "often reference generic product components that are included in all the accused products. Opposition to Motion to Strike at 7:7-8, Dkt. No. 51. But "often" is not enough, and even if it were, CAP makes no claim that each of the limitations of the asserted claims are found in

3

the common "generic component," as it must if it wishes to rely on a single chart with respect to each accused product. The two examples of "generic components" it gives (and they are only examples) -- McAfee's Global Threat Intelligence for the '196 patent and ePolicy Orchestrator for the '078 patent -- do not even allegedly meet these criteria.

The Court consequently strikes CAP's infringement claim charts.

## II. INDIRECT INFRINGEMENT, JOINT INFRINGEMENT, AND DOCTRINE OF EQUIVALENTS[1]

McAfee also moves to strike CAP's contentions with respect to indirect infringement, joint infringement, and the doctrine of equivalents.

### A. Indirect Infringement

With respect to indirect infringement, CAP's infringement contentions consist solely of a single paragraph:

> To the extent that DEFENDANT is not found to directly infringe the patents by selling products that embody the patented claims or use the patented methods, they have committed the acts of an indirect infringer that contribute to or are inducing direct infringement. MCAFEE'S indirect and divided infringement derives from its sale and customer support and instruction of its customers. See https://support.mcafee.com/ServicePortal/faces/wcnav_defaultSelection?_afrLoop=11933466335 94000#%40%3F_afrLoop%3D11933466335 94000%26_adf.ctrl-state%3Dfgjkiey77_69. MCAFEE directs and controls each of these customers by instructing end-users in the operation of the accused products, and taking technical steps to maintain control over the user's operation and access to parts of the software. MCAFEE contractually and technically seeks to control end-users' operation of the product. Contractually, MCAFEE requires users to agree to terms and conditions. http://www.mcafee.com/us/resources/legal/end-user-license-agreements-en-us.pdf; http://www.mcafee.com/us/resources/legal/mcafee-product-entitlement-definitions.pdf.

Infringement Contentions at 2:14-27, Dkt. No. 48-2. This paragraph is insufficient to put McAfee on notice of what, exactly, it does to induce infringement through its "sale and customer support and instruction of its customers" or what it does to "instruct[] end-users in the operation of the

---

[1] McAfee also asks the Court to strike CAP's allegations with respect to willful infringement. The Court has since dismissed CAP's willful infringement claims with prejudice, *see* Dkt. No. 59 at 3:12-5:6, making this portion of the motion moot.

4

accused products" or "take[] technical steps to maintain control over the user's operation and access to parts of the software," and the answer is not apparent from the cited web page, none of which appears to reference the accused functionality. Such generic allegations are insufficient to satisfy Patent Local Rule 3-1(d), which governs a patentee's duty to disclose its indirect infringement theory. *See Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015) (striking indirect infringement contentions that "neither specifie[d] which particular product each advertisement endorsed nor indicates which advertisement led to infringing behavior"); *France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013) (finding insufficient contentions that accused defendant of indirect infringement by "designing the accused products . . . managing the design . . . designing and testing the accused products specifically for compatibility and use within the United States . . . and advertising or representing to third parties that the infringing products are compatible or adapted for use within the United States"); *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-cv-06635-LHK-PSG, 2012 WL 5389775, at *5 (N.D. Cal. Nov. 2, 2012) (finding insufficient contentions that "fail[ed] to identify what advertisements and instructions lead to what infringing behavior").

CAP argues that "McAfee designs all the software that infringes the method" and "[t]he sole issue for indirect infringement is ownership of the computers running [the accused] software and in the case of a few claims, users interaction [sic] with McAfee's programs." Opposition at 10:16-19. Not so. The mere fact that McAfee designs infringing software and that others run it does not make McAfee an indirect infringer. For example, induced infringement requires evidence of "intent to *encourage* infringement," *see Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corp.*, 785 F.3d 625 (Fed. Cir. 2015), and CAP has not attempted to show that McAfee meets that requirement except in the most conclusory fashion. That does not satisfy Patent Local Rule 3-1(d)'s requirement that the patentee provide "a description of the acts of the alleged indirect infringer that contribute to or are inducing . . . direct infringement."

### B. Joint Infringement

With respect to joint infringement, CAP's infringement contentions state:

> To the extent that claims require a web server or a first web server to transmit a "harmful information blocking code module" to a client, MCAFEE owns or controls the web server. To the extent that any claim requires multiple actors consisting of MCAFEE and its customers, MCAFEE serves as the mastermind in their joint infringement.

Infringement Contentions at 3:1-4. In its opposition, CAP clarifies that the web server it is referring to is the server providing McAfee's Global Intelligence Threat services. *See* Opposition at 10 n.2. Contrary to McAfee's claims, this paragraph does contain facts, albeit ones that McAfee may dispute or consider insufficient to show joint infringement. The Patent Local Rules are solely concerned with disclosure, rather than correctness, so there is no basis on which to strike this portion of CAP's contentions.

### C.   Doctrine of Equivalents

With respect to the doctrine of equivalents, CAP merely argues that any claim limitation not literally present is alternatively infringed under the doctrine of equivalents. *See* Infringement Contentions at 3:14-26. In its opposition, it acknowledges that this disclosure is inadequate under the cases in this district interpreting Patent Local Rule 3-1(e), despite the fact that the Rule by its own terms only requires the patentee to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents." *See CSR Tech. Inc. v. Freescale Semiconductor*, No. C-12-02619 RS (JSC), 2013 WL 503077, at *8 (N.D. Cal. Feb. 8, 2013) (collecting cases). Courts in this district have almost uniformly rejected "boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory." *Creagri*, Inc., 2012 WL 5389775, at *6.

While this requirement may not be explicitly found in the text of Rule 3-1(e), it is entirely consistent with the purpose of the patent local rules, which "require a limitation-by-limitation analysis, not a boilerplate reservation." *See Rambus Inc. v. Hynix Semiconductor Inc.*, C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008). Simply stating that the patentee intends to assert the doctrine of equivalents as an alternative theory does not "provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (emphasis added).

As CAP concedes that it does not satisfy Rule 3-1(e) as it has been developed by courts in this district, the Court strikes its doctrine of equivalents contentions.

### III.  PRIORITY DATES

McAfee challenges CAP's contentions regarding the asserted priority dates of the asserted patents on the basis that the contentions merely disclose a date "no later than" which CAP claims priority. *See* Infringement Contentions at 4:6-23. In its opposition, CAP agreed that it would not assert an earlier priority date than the dates listed in its contentions. *See* Opposition at 11:1-18. The Court will allow this amendment, since CAP is being given a chance to amend its contentions on other points in response to this order.

### IV.  ADDITIONAL ACCUSED PRODUCTS IN REVISED CONTENTIONS

Finally, McAfee objects to a number of products that were added to the revised infringement contentions CAP provided three weeks after its initial infringement contentions. Eight products were added: one with respect to the '078 patent and seven with respect to the '196 patent. With respect to the latter, although CAP claims that all the products were part of "categories" that it previously accused, it concedes that they were not mentioned in its original infringement contentions, and that three of them are not even part of product lines identified in its original contentions.

As the Court previously noted, amending infringement contentions requires leave of Court, which will be granted only upon a showing of good cause, including diligence. *See* Patent L.R. 3-6; *O2 Micro*, 467 F.3d at 1366; *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 633406, at *4-5 (N.D. Cal. Feb. 20, 2013). CAP never moved to amend its contentions, and it makes no effort to show diligence in its opposition. Nevertheless, denying it leave to add the new products at this relatively early stage would likely just lead to another suit. Accordingly, as a one-time exception to the usual rules, the Court will permit the amendment.

### CONCLUSION

In light of the fact that claim construction has not yet taken place, the Court will permit CAP a single amendment to its infringement contentions to correct the deficiencies identified in this order. After this one amendment, CAP must move for leave before amending its contentions.

7

1 Moreover, it will be strictly held to the infringement theories disclosed in its infringement
2 contentions for the rest of the case. In revising its claim charts, CAP is reminded that it must
3 generally include a separate chart for each combination of asserted claim and accused product. It
4 may use representative products only if it can show that every limitation of a claim is present in a
5 component that is common to every product covered by a given chart.

      CAP will serve its amended infringement contentions on McAfee within two weeks of the date of this order.

**IT IS SO ORDERED.**

Dated: August 10, 2015

_____
JAMES DONATO
United States District Judge